## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL NO. 3:13-41** |
| **v.** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **GEORGE J. LAWRENCE, IV,** *a/k/a* **"G,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.    SYNOPSIS

Before the Court in this matter are a number of Defendant's pending pretrial motions:  (1) motion to compel the Clerk of Courts to disclose the gender, ethnicity, and other permissible information of grand jurors (ECF No. 227); (2) motion for additional discovery (ECF No. 243); (3) motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (ECF No. 244); (4) motion for reconsideration of the Court's Order (ECF No. 127) denying Defendant's motion to suppress evidence (ECF No. 245); and (5) motion to dismiss the Indictment (ECF No. 247).  The Government has filed four responses:  (1) response to Defendant's motion to dismiss the Indictment (ECF No. 259); (2) response to Defendant's motion for a *Franks* hearing (ECF No. 260); (3) response to Defendant's motion for reconsideration (ECF No. 261); and (4) response to Defendant's motion for additional discovery (ECF No. 262).  The Court will separately address each motion below.

## II. BACKGROUND

This matter arises from certain alleged drug transactions involving Defendant and a subsequent search of his home conducted by police on April 23, 2013, pursuant to a warrant.  The Government filed a six-count Indictment against Defendant and his three co-defendants[1] on December 10, 2013.  (*See* ECF No. 1.)  Defendant is charged in five of the six Counts of the Indictment as follows:  Count 1 charges Defendant with conspiracy to distribute and possess with intent to distribute 28 grams or more of cocaine base; Count 2 charges Defendant with distribution of less than 500 grams of cocaine; Counts 3 and 4 charge Defendant with distribution of less than 28 grams of cocaine base; and Count 6 charges Defendant with possession with intent to distribute 28 grams or more of cocaine base.

Defendant's initial attorney, Arthur McQuillan, was disqualified as counsel on July 27, 2015.  (ECF No. 200.)  The Court appointed Defendant's current attorney, Douglas Sughrue, on July 27, 2015.  (ECF No. 202.)  Trial in this matter is scheduled to begin on January 19, 2016.  (ECF No. 229.)

## III. DISCUSSION

### A. Motion to Compel Grand Juror Information

Defendant requests that the Court direct the Clerk of Courts to disclose the gender, ethnicity, and other information of the Grand Jurors who issued the Indictment against him, and he requests "the right to inspect all jury selection materials relevant to a

---

[1] The motions now pending before the Court do not involve the three co-defendants named in the Indictment—Paulette M. Alt, Donna M. Hawk, and Paul A. Robinson, Jr.

complete determination of whether a Grand Jury has in fact been selected at random from a fair cross-section of the community." (ECF No. 227 at 1, 4.) Specifically, Defendant asserts that the Grand Jury "may have been improperly convened." (*Id.* at 2.) He further notes that his current attorney has not reviewed any of the Jencks Act materials because they were returned to the Government by his prior attorney. (*Id.*) Defendant argues that his "interest in a fair trial outweighs the Grand Jurors' and the Court's interest in not disclosing non-personally identifying data." (*Id.* at 3-4.) The Government objects to Defendant's request. (*Id.* at 4.)

"[T]he standard practice since approximately the 17th century has been to conduct grand jury proceedings in secret." *Giles v. California*, 554 U.S. 353, 371 (2008); *see also United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (noting that "grand jury proceedings are subject to strict secrecy requirements"). Pursuant to Federal Rule of Criminal Procedure 6, however, a court may permit the disclosure of information related to the Grand Jury selection process if a party wishes to challenge the process:

> [A] court may authorize disclosure — at a time, in a manner, and subject to any other conditions that it directs — of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.

FED. R. CRIM. P. 6(e)(3)(E)(ii). The Jury Service Selection Act of 1968 provides that "[t]he contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except pursuant to the district court plan or as may be necessary in the preparation or presentation of a motion." 28 U.S.C.S. § 1867(f).

Such motions include a motion to dismiss the indictment or stay the proceedings. *Id.* §

1867(a)-(c).

The Third Circuit has held that to obtain grand jury materials, "a party must show

a particularized need for that information which outweighs the public interest in secrecy."

*United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989). "Once such a need is shown,

the district court 'must weigh the competing interests and order so much disclosure as

needed for the ends of justice.'" *Id.* (quoting *In re Grand Jury Matter (Catania)*, 682 F.2d 61,

62 (3d Cir. 1982)). In balancing the competing interests, "the district court 'necessarily is

infused with substantial discretion.'" *Id.* (quoting *Douglas Oil Co. v. Petrol Stops Northwest*,

441 U.S. 211, 223 (1979)).

Defendant has failed to show a particularized need for the information he seeks.

His motion fails to establish that any ground may exist to dismiss the Indictment as a

result of irregularities in the Grand Jury proceedings. *See* FED. R. CRIM. P. 6(e)(3)(E)(ii).

Instead, Defendant only states that the Grand Jury "may have been improperly

convened" and that his "interest in a fair trial outweighs the Grand Jurors' and the

Court's interest in not disclosing non-personally identifying data." (ECF No. 227 at 2-4.)

A mere suggestion that the Grand Jury may have been improperly convened is

insufficient to demonstrate a particularized need for disclosure. *See, e.g., United States v.

Minerd*, 299 F. App'x 110, 111-12 (3d Cir. 2008) (per curiam) (holding that the defendant's

"vague allegation" that the Government "committed fraud before the grand jury" did not

establish a particularized need for disclosure); *United States v. Tucker*, No. 05-CR-440, 2011

U.S. Dist. LEXIS 46003, at *6 (E.D. Pa. Apr. 27, 2011) (denying motion for disclosure of

grand jury materials because "[s]uggestions of impropriety . . . are insufficient to establish a particularized need for disclosure"); *United States v. Siceloff*, No. 09-CR-313, 2010 U.S. Dist. LEXIS 35537, at *8-9 (W.D. Pa. Apr. 5, 2010) (denying motion for disclosure of grand juror information as "patently frivolous" because the defendant "ha[d] no colorable challenge to the procedures for the selection of grand or petit jurors"); *United States v. Saunders*, No. 07-CR-341, 2008 U.S. Dist. LEXIS 34494, at *16 (M.D. Pa. Apr. 28, 2008) (denying motion for disclosure of grand jury materials because "mere speculation that . . . improprieties may have occurred will not suffice"). The Court will therefore deny Defendant's motion to compel Grand Juror information.

## B.       Motion for Additional Discovery

In his motion for additional discovery, Defendant requests that the Court require the Government to provide him with copies of the statements of his co-defendant, Paul Robinson, Jr. (ECF No. 243 at 1.) Defendant states that his understanding is that co-defendant Robinson's statements "are clearly exculpatory in nature and necessary for [his] Motion to Dismiss the Indictment," which involves the Government's use of testimony that it "knew or should have known to be incorrect, inaccurate, untruthful[,] and misleading." (*Id.* at 2.) In response, the Government asserts that Defendant's motion must be denied because, pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and *Brady v. Maryland*, 373 U.S. 83 (1963), the Government "has informed defense counsel of all relevant exculpatory statements." (ECF No. 262 at 1.)

As the Third Circuit has explained, criminal pretrial discovery is "vastly different from discovery in civil cases." *United States v. Ramos*, 27 F.3d 65, 67 (3d Cir. 1994). Rule 16

of the Federal Rules of Criminal Procedure "delineates the categories of information to which defendants are entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." *Id.* at 68. For example, the Jencks Act provides that after each Government witness has testified on direct examination, the Government must produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). Pursuant to *Brady* and *Giglio*, the Government must produce "evidence favorable to [the] accused," *Brady*, 373 U.S. at 87, and potential impeachment material, *Giglio*, 405 U.S. at 154. Such evidence includes exculpatory materials "that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness." *United States v. Hill*, 976 F.2d 132, 134-35 (3d Cir. 1992).

Unless Rule 16(a)(1) provides otherwise, the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." FED. R. CRIM. P. 16(a)(2). "Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in [the Jencks Act]." *Id.* As previously discussed, the Jencks Act sets forth the Government's obligations to produce materials after the direct examination of its witnesses. *See* 18 U.S.C. § 3500.

Initially, the Court notes that the Government has recognized its obligations under *Brady* and its progeny, *Giglio*. (ECF No. 262 at 1.) The Government has also represented

that it "has informed defense counsel of all relevant exculpatory statements." (*Id.*)  The Court is confident that the Government is aware of its continuing disclosure obligations and that it will discharge its duty.  *See, e.g., United States v. Harvey*, No. 12-CR-113, 2014 U.S. Dist. LEXIS 20824, at *32 (W.D. Pa. Feb. 20, 2014) (denying the defendant's motion for discovery after the Government represented that it did not possess exculpatory or *Brady* material pertaining to the defendant); *United States v. Hayes*, No. 09-CR-397, 2010 U.S. Dist. LEXIS 67446, at *47-51 (M.D. Pa. July 7, 2010) (denying the defendant's motion for discovery because the Government insisted that it did not possess *Brady* material and that it complied with Rule 16).

Moreover, the amended pretrial order in this matter provides that "[t]he Government is encouraged to provide Jencks Act materials . . . no later than four (4) days before trial" and that "[t]he Government shall provide defense counsel with copies of any *Brady/Giglio* materials not previously disclosed at least fourteen (14) days before trial." (ECF No. 229 ¶ 3(a)-(b) (emphasis omitted).)  Because trial in this matter is not scheduled to commence until January 19, 2016, the Government has not violated its discovery obligations.  *See, e.g., United States v. Green*, No. 08-CR-26, 2009 U.S. Dist. LEXIS 45476, at *14-17 (W.D. Pa. June 1, 2009) (denying the defendant's motion for discovery because the Government's deadline for disclosing *Brady* material had not yet passed).  Finally, the Court notes that Defendant has requested the statements made by his co-defendant.  It is well settled that "[a]lthough any statement made by a co-conspirator . . . must be provided to the defendant pursuant to the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2 of the Federal Rules of Criminal Procedure, [the Court] cannot compel the government to

turn over such statements before the witness actually testifies at trial." *United States v. Smith*, No. 07-CR-289, 2009 U.S. Dist. LEXIS 18923, at *12 (M.D. Pa. Mar. 4, 2009) (citing *United States v. Murphy*, 569 F.2d 771, 773-74 (3d Cir. 1978)). The Court will therefore deny Defendant's motion for additional discovery.

C.      **Motion for a *Franks* Hearing**

In his motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant initially notes that his prior counsel argued at a suppression hearing that his motion to suppress evidence met the required showing for a *Franks* hearing. (ECF No. 244 at 2.) After the Court rejected prior counsel's argument, Defendant filed a supplemental motion to suppress evidence pursuant to *Franks* and requested a *Franks* hearing, which the Court denied on November 4, 2014. (*Id.*; *see also* ECF No. 127.)

Defendant's current counsel states that the instant motion is supplemented with additional facts and arguments not previously presented to the Court. (ECF No. 244 at 2.) In support thereof, Defendant asserts that the affidavit of probable cause executed by Detective Thomas Keirn contained false averments regarding his involvement in the April 16, 2013, controlled buy at co-defendant Paulette Alt's home. (*Id.* at 3.) Specifically, Detective Keirn stated that "a Confidential Informant . . . did make a successful purchase of crack cocaine from [Defendant] with the use of official funds" and that "[t]he actual transaction for the drugs was completed by [co-defendant Alt] after [Defendant] arrived and supplied [co-defendant Alt] with the crack cocaine for the deal." (*Id.*; ECF No. 244-1 ¶ 5 (emphasis omitted).) Detective Keirn further stated that "[t]he [undercover] officer

witnessed [Defendant] meet and supply the crack for the deal to [co-defendant Alt]."

(ECF No. 244 at 3; ECF No. 244-1 ¶ 5 (emphasis omitted).)

Defendant contends that Detective Keirn's statements are "blatantly false and irreconcilable" because Agent Norman Young, an undercover officer, stated in his surveillance report that he did not purchase crack cocaine from Defendant and that he did not witness any exchange between co-defendant Alt and Defendant. (ECF No. 244 at 3.) In his report, Agent Young wrote, "[Co-defendant Alt] then walks back with [Defendant] to front of house. Approximately 1 minute later, [co-defendant Alt] gives Young 12 bags of crack cocaine. Young gives target (1) bag for hocking up deal." (*Id.*; ECF No. 244-2 at 1.) Defendant notes that Agent Young testified during the preliminary hearing that he "did not see [Defendant] hand anything to [co-defendant Alt], but [he] did not get the drugs until [Defendant] arrived." (ECF No. 244 at 4; ECF No. 244-3 at 13.) Defendant argues that the affidavit of probable cause contains "a material deliberate falsehood" because "Defendant was not even in the same room when the confidential informant made a successful purchase of crack cocaine from co-defendant Alt" and because "the confidential informant and the undercover officer did not witness Defendant allegedly supply the crack for the deal with co-defendant Alt." (ECF No. 244 at 4.) Defendant asserts that the evidence establishes that he is entitled to a *Franks* hearing because "[w]hen this deliberate falsehood is removed from the affidavit[,] the remaining content of the affidavit is insufficient to support probable cause." (*Id.* at 5.)

In response, the Government argues that Defendant is collaterally estopped from requesting a *Franks* hearing because he raised the same issue in his previous motion for a

*Franks* hearing, which the Court denied on November 4, 2014. (ECF No. 260 at 2-5.) The Government asserts that "[r]egardless of any 'new evidence' ascertained or 'new argument' developed, such evidence or arguments could have been discovered and presented in the past hearing." (*Id.* at 5.) The Government contends that even if Defendant's motion is not barred by the doctrine of collateral estoppel, Defendant has failed to establish that "the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth." (*Id.* at 7.) In addressing Detective Keirn's affidavit of probable cause and Agent Young's surveillance report, the Government argues that "Detective Keirn had no obvious reason to doubt the truth of what he was asserting" because "it is evident that [Agent Young] went to [co-defendant Alt's] house to purchase crack cocaine" and "had to wait for the arrival of [Defendant]" before the transaction occurred. (*Id.* at 9.)

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and requires that a "neutral and detached magistrate" issue a warrant only upon probable cause. *Johnson v. United States*, 333 U.S. 10, 14 (1948). An affidavit must provide a magistrate with a "'substantial basis,'" under the totality of the circumstances, for determining the existence of probable cause. *United States v. Grubbs*, 547 U.S. 90, 97 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Generally, a magistrate's finding of probable cause is afforded "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984). However, his or her finding cannot be a "mere ratification of the bare conclusions of others," *Gates*, 462 U.S. at 239, nor may an affidavit

stand when found "after the fact to contain a deliberately or recklessly false statement." *Franks*, 438 U.S. at 165.

Pursuant to *Franks*, a hearing must be held upon a defendant's request "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. Thus, Defendant must make a substantial preliminary showing that Detective Keirn made a deliberately false or a reckless statement or omission in applying for the warrant, and must also show that the alleged false statement or omission was necessary to the probable cause determination made by Judge Patrick T. Kiniry of the Court of Common Pleas of Cambria County. *Id.*; *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). Negligence or innocent mistakes are not sufficient to meet this burden. *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000). "An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* at 788 (quoting *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995)).

The Government's argument that the doctrine of collateral estoppel applies is based upon *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). (ECF No. 260 at 2 n.2.) In *Ashe*, however, the defendant who was convicted at trial invoked the doctrine, not the Government. *See Ashe*, 397 U.S. at 439-40. In the Third Circuit, it is well settled that "there has been a strong, unelaborated assumption that the doctrine of collateral estoppel cannot

be invoked in criminal cases against the defendant. Judges have stressed in dicta that unlike in civil cases, the collateral estoppel principle should not be applied to both parties in criminal cases." *United States v. Pelullo*, 14 F. 3d 881, 891 (3d Cir. 1994); *see also United States v. Price*, 13 F.3d 711, 720 (3d Cir. 1994) (noting that "this court has never held that collateral estoppel can be invoked by the government against a defendant in a criminal trial" and declining to decide the issue); *United States v. Rigas*, 779 F. Supp. 2d 408, 413 (M.D. Pa. 2011) (finding that the doctrine of collateral estoppel did not apply against the defendant). The Court therefore concludes that the doctrine of collateral estoppel is inapplicable in this case.

Defendant argues that Detective Keirn's affidavit of probable cause contained three false statements: (1) "a Confidential Informant . . . did make a successful purchase of crack cocaine from [Defendant] with the use of official funds;" (2) "[t]he actual transaction for the drugs was completed by [co-defendant Alt] after [Defendant] arrived and supplied [co-defendant Alt] with the crack cocaine for the deal;" and (3) "[t]he [undercover] officer witnessed [Defendant] meet and supply the crack for the deal to [co-defendant Alt]." (ECF No. 244 at 3; ECF No. 244-1 ¶ 5 (emphasis omitted).) To show that these statements are false, Defendant quotes Agent Young's surveillance report, which states that "[co-defendant Alt] then walks back with [Defendant] to front of house. Approximately 1 minute later, [co-defendant Alt] gives Young 12 bags of crack cocaine. Young gives target (1) bag for hocking up deal." (ECF No. 244 at 3; ECF No. 244-2 at 1.) Defendant also includes quotations from the transcript of his state preliminary hearing, where Agent Young testified that he "did not see [Defendant] hand anything to [co-

defendant Alt], but [he] did not get the drugs until [Defendant] arrived." (ECF No. 244 at 4; ECF No. 244-3 at 13.)

Regarding the first prong of the test under *Franks*, Defendant has failed to establish the falsity of the asserted statements. The Court finds that the three statements included in Detective Keirn's affidavit contain permissible inferences based upon Agent Young's observations. At the preliminary hearing, Agent Young testified that after he entered co-defendant Alt's home, "[s]he wanted to make sure [he] did have the $200" and "[made] a call to an unknown person to find out how long it was going to be." (ECF No. 244-3 at 5.) Co-defendant Alt then told Agent Young "that he would be [there] shortly." (*Id.*) Co-defendant Alt instructed Agent Young and the confidential informant "to go to the kitchen area" when "her man" arrived. (*Id.* at 6.) After Agent Young heard a knock on the door, he handed co-defendant Alt the $200 and waited in the kitchen with the confidential informant "for not even a minute" when Defendant entered the kitchen because "he wanted to see the money man." (*Id.* at 6-7.) Defendant "wanted to know if [Agent Young] was a cop," and when Agent Young stated that he was "5-0," Defendant "smiled . . . and then walked out of that kitchen area." (*Id.*) Approximately thirty to forty-five seconds later, co-defendant Alt called Agent Young to the middle room, where she handed him the drugs while Defendant was "in the immediate area." (*Id.* at 8.) After Agent Young counted twelve bags and gave co-defendant Alt one bag, he and the confidential informant departed. (*Id.*) Detective Keirn then conducted a field test on the substance, which tested positively for cocaine. (*Id.* at 8-9.)

On cross-examination, Agent Young testified that he knew that Defendant "was the only one [who] came in [to co-defendant Alt's home]" because he "heard one voice." (*Id.* at 9.)  He explained that the home was "a very small area" and that only a hallway separated the kitchen from the living area.  (*Id.*)  Agent Young testified that there may have been more rooms in the home upstairs but that "[he] certainly didn't hear anybody scurrying upstairs or coming down."  (*Id.* at 10-11.)  On redirect examination, Agent Young stated that co-defendant Alt did not deliver the drugs to him upon receiving the $200 "[b]ecause we were waiting for her man."  (*Id.* at 11.)  He further stated that he "got the delivery about two minutes" after there was a knock on the door and that "there was no other person . . . other than [Defendant]" who entered the residence after him.  (*Id.* at 12.)  On re-cross examination, Agent Young testified that he "did not see [Defendant] hand anything to [co-defendant Alt], but [he] did not get the drugs until [Defendant] arrived."  (*Id.* at 13.)

While Agent Young did not hand the $200 to Defendant, Defendant asked to see "the money man," and Agent Young did not receive the cocaine until Defendant arrived; Detective Keirn's statement that "a Confidential Informant . . . did make a successful purchase of crack cocaine from [Defendant] with the use of official funds" is therefore permissible.  (ECF No. 244 at 3; ECF No. 244-1 ¶ 5 (emphasis omitted).)  Similarly, because Agent Young was unable to obtain the cocaine until Defendant arrived, Detective Keirn's statement that "[t]he actual transaction for the drugs was completed by [co-defendant Alt] after [Defendant] arrived and supplied [co-defendant Alt] with the crack cocaine for the deal" is permissible.  (ECF No. 244 at 3; ECF No. 244-1 ¶ 5 (emphasis omitted).)  Finally,

while Agent testified that he did not see Defendant give co-defendant Alt the drugs, he testified that he observed Defendant meet with co-defendant Alt and that co-defendant Alt had drugs after meeting with the Defendant, but not before the meeting. Detective Keirn's statement that "[t]he [undercover] officer witnessed [Defendant] meet and supply the crack for the deal to [co-defendant Alt]" is therefore permissible. (ECF No. 244 at 3; ECF No. 244-1 ¶ 5 (emphasis omitted).) Accordingly, Defendant has failed to make a substantial preliminary showing that the affidavit of probable cause contained a false statement.

Likewise, even assuming the three statements in the affidavit were false, Defendant has failed to show that Detective Keirn included the statements in his affidavit knowing that they were false or with a reckless disregard for their truth. To establish that an affiant's conduct was reckless, a defendant must show that "either the affiant actually entertained serious doubts; or obvious reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state of mind." *United States v. Brown*, 631 F.3d 638, 645 (3d Cir. 2011). Here, there is simply no evidence to suggest that "serious doubts" or "obvious reasons" existed such that the three statements included by Detective Keirn in his affidavit were false or were made in reckless disregard for the truth.

Regarding the second prong of the test under *Franks*, Defendant has also failed to make a substantial preliminary showing that the alleged false statements were necessary to the issuing court's finding of probable cause. This "next step of the reconstructive surgery" requires the Court to "assess whether the statements and omissions made with reckless disregard of the truth were 'material, or necessary, to the finding of probable

15

cause'" by excising the false statement to determine whether the "'corrected' warrant lacked probable cause." *Wilson*, 212 F.3d at 789, 792 (quoting *Sherwood v. Mulvihill*, 113 F. 3d 396, 399 (3d Cir. 1997)); *Yusuf*, 461 F.3d at 384. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *United States v. Blair*, No. 12-CR-275, 2013 U.S. Dist. LEXIS 146511, at *9 (W.D. Pa. Oct. 10, 2013) (quoting *Franks*, 438 U.S. at 171-72).

Here, even if the alleged false statements are excised from the affidavit of probable cause, the Court finds that the affidavit nevertheless contains sufficient information to establish a substantial basis to support the issuing judge's finding that evidence, fruits, and instrumentalities of drug dealing would be found at Defendant's residence at 103 Catherine Street. Accordingly, the alleged false statements were not necessary to the finding of probable cause.

Therefore, having carefully reviewed the Defendant's motion and the Government's response, and in accordance with the applicable case law, the Court finds that Defendant has failed to make the required substantial preliminary showing of deliberately false or reckless statements or omissions in the affidavit. Accordingly, Defendant is not entitled to a *Franks* hearing.

### D. Motion for Reconsideration

In his motion for reconsideration, Defendant requests that the Court reconsider its order denying Defendant's motion to suppress evidence. (ECF No. 245 at 1.) Defendant initially notes that his prior counsel filed a motion to suppress evidence, which the Court

denied on November 4, 2014.  (*Id.* at 2; *see also* ECF No. 127.)  Defendant's current counsel states that the instant motion is supplemented with additional facts and arguments not previously presented to the Court.  (ECF No. 245 at 2.)  In support thereof, Defendant asserts that "[p]robable cause is lacking to show that [Defendant's] residence is or was likely to provide evidence of the past or future commission of crime by anyone."  (*Id.* at 3.) Defendant contends that "[t]here is nothing within the four corners of the application that indicates that any evidence of a crime would be found at Defendant's residence."  (*Id.*) Defendant states that the illegal conduct referenced in the application did not occur at his residence and that "the information purportedly providing the nexus between the criminal activity and [his residence]" was stale.  (*Id.* at 4.)  He reiterates his argument that there was no probable cause because Agent Young "did not see [Defendant] hand anything to [co-defendant Alt], but [he] did not get the drugs until [Defendant] arrived." (*Id.* at 5-6.)

Regarding the suppression hearing held on September 2, 2014, Defendant asserts that his initial counsel "was prepared to call witness(es) to support a finding of the falsity of statements within the affidavit," but the Court denied him "the ability to confront the [Government's] witnesses."  (*Id.* at 7.)  Defendant claims that his witnesses "would have testified to the truth of the facts contained in Agent Young's April 16, 2013[,] police report, his consistent sworn testimony from the June 17, 2013[,] preliminary hearing[,] and the fact that the information in the four corners of the affidavit . . . was not accurate."  (*Id.*)  He requests that the Court schedule a hearing, suppress all items obtained as a result of the

search of his residence, and suppress any other evidence obtained through the unlawful search of the premises. (*Id.* at 8.)

In response, the Government contends that Defendant merely repeats the same argument he made in his initial motion to suppress evidence. (ECF No. 261 at 2.) The Government notes that Defendant does not argue that there has been an intervening change in controlling law or that there was a clear error of law. (*Id.*) The Government claims that the only issue not included in Defendant's initial motion is one of staleness, which "was available at the time of the original suppression hearing." (*Id.* at 3.) Because Defendant delivered a batch of recently cooked crack cocaine to the confidential informant on the day the search warrant was executed, the Government argues that the information contained in the affidavit of probable cause was not stale. (*Id.* at 4.)

A court may grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also United States v. Croce*, 355 F. Supp. 2d 774, 775 n.1 (E.D. Pa. 2005) (applying the same standard to a motion for reconsideration in a criminal case); *United States v. Korbe*, No. 09-CR-05, 2010 U.S. Dist. LEXIS 73334, at *2 (W.D. Pa. July 21, 2010) (same). Motions for reconsideration provide district courts the opportunity to correct their own alleged errors; they are not intended to provide litigants "a second bite at the apple." *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

As the Government has noted, Defendant does not cite to new evidence or an intervening change in the controlling law, and he makes no arguments regarding the need to correct a clear error of law or fact or to prevent a manifest injustice. With the exception of his staleness argument, the Court considered Defendant's other arguments when deciding his initial motion to suppress evidence.

If information supporting a warrant application is stale, it cannot be used to establish probable cause. *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). "If information is too old, it may have little value in showing that contraband or evidence is still likely to be found in the place for which the warrant is sought." *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997). However, age alone does not determine whether information is stale. *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010). Rather, the reviewing court "must also examine the nature of the crime and the type of evidence." *Harvey*, 2 F.3d at 1322. Additionally, "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance." *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005).

Defendant argues, without providing any legal authority, that the affidavit of probable cause included stale facts "concerning the nexus between [Defendant's residence] and the illegal activity of [Defendant]." (ECF No. 245 at 5.) Detective Keirn signed the affidavit of probable cause on April 23, 2013. (ECF No. 245-1 at 1.) Within the affidavit, Detective Keirn stated that the Cambria County Drug Task Force "has been

investigating and making controlled purchases surrounding [Defendant] as the supplier of crack cocaine purchased since February 2013." (*Id.* at 4 (emphasis omitted).) Detective Keirn then detailed events that occurred on April 14, 2013, April 18, 2013, April 21, 2013, and April 23, 2013. (*Id.* at 4-6.) Based upon Detective Keirn's affidavit, a time period of, at most, eighty-two days lapsed between the start of the Cambria County Drug Task Force's investigation and the filing of Detective Keirn's affidavit. The Court cannot conclude that a time lapse of eighty-two days under these circumstances renders the affidavit stale. *See, e.g.*, *United States v. Savage*, No. 07-CR-550, 2013 U.S. Dist. LEXIS 13713, at *14 (E.D. Pa. Feb. 1, 2013) (rejecting the defendant's argument that the affidavit of probable cause was stale because it contained information which occurred over two years prior to the issuance of the warrant); *United States v. Curran*, No. 09-CR-325, 2011 U.S. Dist. LEXIS 57117, at *6-8 (W.D. Pa. May 27, 2011) (rejecting the defendant's argument that a lapse of eighty-two days rendered the affidavit of probable cause stale because "[t]he protracted and continuous nature of narcotics operations . . . extend the shelf life of information in determining staleness").

Defendant has set forth no basis for the Court to reconsider the merits of his motion to suppress evidence. Defendant has made no additional arguments and adduced no additional evidence that warrant the Court's reconsideration of his motion. The Court gave due consideration to Defendant's arguments upon consideration of his initial motion. The Court will therefore deny Defendant's motion for reconsideration.

### E.  Motion to Dismiss the Indictment

In his final motion, Defendant contends that the Indictment must be dismissed because certain Grand Jury testimony, which is set forth in Defendant's motion, "was inaccurate, misleading, and false or was made with the reckless disregard for the truth." (ECF No. 247 at 2.)  The transcript of the testimony at the Grand Jury proceedings has been filed under seal.  (ECF No. 252.)  The Court has reviewed the transcript in its entirety but will not make reference to its specific contents.[2]  However, the Court, in addressing Defendant's arguments, must by necessity make reference to certain Grand Jury testimony in a general manner.

Defendant asserts that the referenced testimony concerning his prior conviction "at the very beginning of the proceeding . . . taint[ed] the Grand Jury's perception of him." (ECF No. 247 at 2.)  He argues that this testimony "was offered to show that [Defendant] was a criminal who the grand jurors could assume had acted in conformity with his criminal character."  (*Id.* at 4.)  Defendant also contends that the witness's false testimony "was essential to the Grand Jury's finding of probable cause" and that the witness would have known his testimony was false because he had access to the information from the preliminary hearing.  (*Id.* at 3-4.)

In response, the Government argues that a Grand Jury may consider a defendant's prior criminal record.  (ECF No. 259 at 2.)  The Government also characterizes Defendant's prior conviction as *res gestae* evidence because "[i]t tells the story of how

---

[2] The Grand Jury testimony will not be quoted by the Court nor shall the names of witnesses be used for the reason that Grand Jury proceedings are to remain confidential.

Defendant was released from prison, quickly came back to Johnstown, and began selling crack cocaine again." (*Id.* at 3.) The Government disputes Defendant's characterization of the testimony concerning the events referenced by Defendant and asserts that Defendant's motion cannot be granted simply because he "disagree[s] with the . . . evidence." (*Id.* at 4.)

The dismissal of an indictment is a "'drastic remedy.'" *United States v. Muhammad*, 336 Fed. Appx. 188, 193 (3d Cir. 2009) (quoting *United States v. Morrison*, 449 U.S. 361, 365 n.2 (1981)). "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendant[]." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). "To find prejudice, the district court must establish that 'the violation substantially influenced the grand jury's decision to indict,' or . . . [that] there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *United States v. Soberon*, 929 F.2d 935, 939-40 (3d Cir. 1991) (quoting *Bank of Nova Scotia*, 487 U.S. at 256). "[T]he presentation of . . . allegedly perjured testimony to the grand jury does not fall into the narrow category of cases in which dismissal of charges without a showing of prejudice is warranted." *Id.* at 940.

Having reviewed the witness's testimony at the Grand Jury proceedings, the Court finds that there is no basis upon which it can conclude that deliberately false testimony was presented to the Grand Jury. Defendant has failed to establish any violations that "substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256. *See also United States v. Sampson*, No. 07-CR-389, 2010 U.S. Dist. LEXIS 36400 (M.D.

Pa. Apr. 13, 2010) (denying motion to dismiss indictment because "[the defendant] ha[d] not presented evidence of deliberately false material testimony presented to the Grand Jury"); *United States v. Jones*, No. 09-CR-137, 2009 U.S. Dist. LEXIS 84964, at *10-14 (E.D. Pa. Sept. 16, 2009) (denying motion to dismiss indictment because the testimony was "completely credible" and the record reflected that the witness "did not lie to or otherwise mislead the grand jury").

Similarly, Defendant has failed to demonstrate that the reference in the testimony to Defendant's prior conviction resulted in a "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Soberon*, 929 F.2d at 939-40 (quoting *Bank of Nova Scotia*, 487 U.S. at 256). *See also United States v. Stafford*, No. 08-CR-122, 2009 U.S. Dist. LEXIS 8483, at *4-7 (D. Del. Feb. 5, 2009) (denying motion to dismiss indictment after rejecting the defendant's argument that the Government engaged in prosecutorial misconduct by presenting information concerning his prior arrests and/or convictions to the grand jury); *United States v. Harris*, No. 05-CR-598, 2006 U.S. Dist. LEXIS 50310, at *16-21 (E.D. Pa. July 21, 2006) (denying motion to dismiss indictment after the Government presented incorrect testimony about a conviction for drug trafficking but presented correct testimony that the defendant had been convicted of a conspiracy to commit murder). The Court will therefore deny Defendant's motion to dismiss the indictment.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to compel the Clerk of Courts to disclose the gender, ethnicity, and other permissible information of grand jurors (

227); motion for additional discovery (ECF No. 243); motion for a *Franks* hearing (ECF No. 244); motion for reconsideration of the Court's order denying Defendant's motion to suppress evidence (ECF No. 245); and motion to dismiss the Indictment (ECF No. 247) are **DENIED**.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | )   **CRIMINAL NO. 3:13-41** |
| v. | ) |
| | )   **JUDGE KIM R. GIBSON** |
| GEORGE J. LAWRENCE, IV, *a/k/a "G,"* | ) |
| | ) |
| Defendant. | ) |

## ORDER

**AND NOW**, this 15th day of December, 2015, having considered Defendant's motion to compel the Clerk of Courts to disclose the gender, ethnicity, and other permissible information of grand jurors (ECF No. 227); motion for additional discovery (ECF No. 243); motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (ECF No. 244); motion for reconsideration of the Court's order (ECF No. 127) denying Defendant's motion to suppress evidence (ECF No. 245); and motion to dismiss the Indictment (ECF No. 247), and the Government's responses, (ECF Nos. 259; ECF No. 260; ECF No. 261; ECF No. 262), and for the reasons set forth in the attached memorandum opinion, **IT IS HEREBY ORDERED** that Defendant's motions are **DENIED.**

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE